**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MONTANA**

In re

      **MARK A SULLIVAN, SR.** and                Case No. **06-60618-7**
      **DIANA M SULLIVAN**,

             Debtors.

*MEMORANDUM  of  DECISION*

At Butte in said District this 27th day of June, 2007.

In this Chapter 7 bankruptcy, after due notice, a hearing was held May 8, 2007, in Butte on the United States Trustee's Motion to Dismiss filed January 25, 2007. The United States Trustee ("UST") was represented at the hearing by attorney Daniel P. McKay ("McKay"), of Great Falls, Montana, and Debtors were represented at the hearing by their attorney of record, R. Clifton Caughron ("Caughron"), of Helena, Montana. The Court heard testimony from Lawrence C. Rezentes ("Rezentes")[1] and Debtor Mark Sullivan ("Mark"). The UST's Exhibits 1 through 8 were admitted into evidence without objection.

The UST moves to dismiss this case under 11 U.S.C. § 707(b) arguing that this case is an abuse of Chapter 7 because "there is a presumption of abuse under § 707(b)(2) which the debtor will not be able to rebut, and even if the Court finds that there is no presumption of abuse or that

---

[1] Rezentes is employed by the Office of the United States Trustee as a bankruptcy analyst.

1

the Debtors have rebutted the presumption, the totality of the circumstances of the Debtors' financial situation demonstrates abuse and this case should be dismissed under § 707(b)(3)." Debtors filed a one sentence "Response to U.S. Trustee's Motion to Dismiss" on February 5, 2007, wherein Debtors did not dispute any of the allegations leveled by the UST but set the matter for hearing.  As a result of a request for continuance made by the UST, the hearing in this matter was continued from March 6, 2007, to May 8, 2007.

This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a), made applicable to the proceeding by Rule 7052, F.R.B.P. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 707. For the reasons discussed herein, the Court finds that the UST's Motion to Dismiss was filed for good cause and the Court will thus enter a separate order dismissing this case.

## BACKGROUND

Mark and Diana Sullivan, the Debtors, are married and live in Clancy, Montana.  Debtors filed a voluntary Chapter 13 bankruptcy petition on July 31, 2006, together with their Schedules, and Statement of Financial Affairs.[2]  On Schedule F, Debtors list $90,120.35 in unsecured debt,

---

[2]  Debtors previously filed a Chapter 7 bankruptcy petition on March 27, 2006.  *See* Bankruptcy Case No. 06-60154.  The UST filed a motion to dismiss in that case on May 5, 2006, arguing:  "The debtors have failed to file, as a part of the schedule of current income and current expenditures required by Bankruptcy Code § 521(a)(1)(B)(ii), the statement of current monthly income, and the calculations that determine whether a presumption of abuse arises under Bankruptcy Code § 707(b)(2)(A)(i). This statement is commonly known as the Statement of Current Monthly Income and Means Test Calculator. Failure to file the statement within 15 days of the commencement of the case, or within such additional time as the Court allows, is grounds for dismissal pursuant to Bankruptcy Code § 707(a)(3). The debtors did file a document that apparently was intended to meet the filing requirement (Docket No. 4), but that document does not conform to Official Form B-22A, nor does it contain the information required by § 521(a)(1)(B)(ii). Failure to file the Statement of Current Monthly Income and Means Test Calculator is ground to dismiss this case under Bankruptcy Code § 707(a)(3)."  After Debtors

2

together with 26 other creditors' claims listed as "unknown". Debtors subsequently filed on

August 3, 2006, Form B22C "Statement of Current Monthly Income and Calculation of

Commitment Period and Disposable Income." In the original Form B22C, Debtors list their

current monthly income as $9,502.00 and assert that the total of all deductions allowed under §

707(b)(2) is $9,559.25.

Debtors list four dependents in their Schedules. Both Debtors are employed by the State

of Montana. On their original Schedules I and J filed on July 31, 2006, Debtors reported their

combined monthly gross income as $9,511.93 and reported their monthly expenses as $6,477.79.

Debtors own the home in which they reside, which is valued by Debtors in Schedule A at

$168,000, and Debtors own three motor vehicles, namely, a 1976 Ford Truck, 2003 Chevrolet

Suburban, and a 1996 Geo.

On November 3, 2006, the Chapter 13 Trustee filed a Motion to Convert, seeking to

convert this case to Chapter 7 because the Debtors had done nothing in response to the Trustee's

Objection to Confirmation filed September 26, 2006, and therefore, the Chapter 13 Trustee

argued that "Debtors' failure to take action constitutes delay which is prejudicial to the creditors,

giving rise to convert pursuant to 11 U.S.C. § 1307(c)." In response to the Trustee's Motion to

Dismiss, Debtors filed an amended Form B22C on November 6, 2006, at 5:31 p.m. In the

---

failed to timely respond to the UST's motion, the Court found that the motion was filed for good
cause and entered an Order on May 19, 2006, dismissing Debtors' prior bankruptcy. Debtors
filed a motion to reconsider the Order dismissing Debtors' prior bankruptcy case, but
subsequently withdrew such motion. Interestingly, the UST later moved to reopen Case No. 06-
60154 to file a motion for disgorgement of fees. After Caughron failed to respond to the UST's
motion for disgorgement, the Court entered an Order on August 8, 2006, directing Caughron to
disgorge to Debtors the sum of $1,900.00.

amended Form B22C, Debtors list their current monthly income as $9,502.00 and assert that the

total of all deductions allowed under § 707(b)(2) is $9,427.25.  Following a hearing held

November 7, 2006, on confirmation of Debtors' Second Amended Chapter 13 Plan filed August

17, 2006, the Court converted this case to Chapter 7.  In the Order of November 8, 2006, the

Court explained:

> In this case, the Trustee filed a Motion to Convert on November 3, 2006, seeking to convert this case to Chapter 7 of the Bankruptcy Code.  At the hearing, the Trustee requested that the Court grant his Motion to Convert on the basis that Debtors filed an amended Form B22C on November 6, 2006, at 5:31 p.m.  The Trustee argued that Debtors' surprise tactic of tardily filing an amended Form B22C prejudiced the Trustee.  Although the Trustee's Motion to Convert is not technically ripe, Debtors' counsel represented on several occasions that Debtors did not oppose conversion of this case to Chapter 7.  The Court nevertheless proceeded to hear testimony from Debtor Mark A. Sullivan ("Mark") and Exhibits 1, 2 and 3 were admitted into evidence without objection.
>
> At the conclusion of Mark's testimony, it was apparent to the Court that Debtors did not list all their prepetition debts on their schedules.  In particular, it appears that Debtors intentionally omitted their medical obligations with the intent of repaying those obligations outside their bankruptcy.  Such admission by Mark, together with Debtors' consent to the Trustee's Motion, convinces this Court that conversion of this case to Chapter 7 of the Bankruptcy Code is
>
> appropriate.

Debtors did not file a Form B22A following conversion of this case to Chapter 7 of the

Bankruptcy Code.  Debtors did, however, file a "Brief Opposing U.S. Trustee's Motion to

Dismiss" on June 8, 2007, at 3:20 p.m., which Brief was accompanied by three Exhibits.  Exhibit

A is a completed Form B22A, Exhibit B is an affidavit of Mark and Exhibit C is an affidavit of

Debtor Diana Sullivan ("Diana").  The Court rejects the affidavits of Mark and Diana on grounds

they are hearsay, not subject to cross examination, and were filed after the close of testimony.

The Court would also note that Debtors have, to date, not amended their schedules to include the

medical debts that were intentionally omitted from Debtors' Schedules filed July 31, 2007, which intentional omission the Court discussed in the Order converting this case to Chapter 7 entered November 8, 2006.

As reflected in the Form B22A attached to Debtors' Brief filed June 8, 2007, Debtors checked the box on the top of the first page indicating that a presumption of abuse does not arise in this case.  Debtors do not dispute the UST"s calculation of Debtors' income.  In particular, Debtors agree that their current monthly income is $9,502.00 for purposes of 11 U.S.C. §§ 707(b)(2) and 707(b)(7).  Debtors' also agree that their annualized current monthly income of $114,024.00 is above the applicable median family income of $64,984.00 for other Montana residents similarly situated to Debtors.  In fact, Debtors' income is only $15,944.00 short of being twice that of the median income for a family of six in Montana.

Debtors and the UST also agree on most of Debtors' claimed allowable expenses. According to Debtors, the only two areas in which Debtors disagree with the UST's expense calculations relate to Debtors' claimed expense for additional housing and utilities of $450.00 as reflected on line 21, and Debtors' claimed educational expense for dependent children under the age of 18 of $285.00 as set forth on line 38.  The Court would note that Debtors' did not claim any additional housing and utility expense on line 26 of the Form B22C's filed August 3, 2006, and November 6, 2006.  Similarly, as reflected on the Form B22C's filed August 3, 2006, and November 6, 2006, Debtors claimed an expense of $25.00 for educational expenses on line 43. Consistent with Debtors' Form B22C's filed August 3, 2006, and November 6, 2006, the UST has not allowed Debtors any additional expense for housing and utilities and has allowed Debtors an expense of $25.00 for the educational expenses for dependent children under the age of 18.

5

Based upon the Form B22's filed with the Court at the time of the hearing on the UST's Motion, the UST argues that Debtors' 60-month disposable income is $29,560.20.  In contrast, as reflected in Exhibit A attached to Debtors' post-hearing brief, Debtors maintain that their 60-month disposable income is $-10,557.00.

APPLICABLE LAW

The Bankruptcy Abuse and Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005) ("BAPCPA") was signed into law by President George W. Bush on April 20, 2005, and with certain exceptions, is applicable to cases commenced after October 16, 2005.[3]  The instant bankruptcy case was commenced on July 31, 2006, and is thus governed by the Bankruptcy Code, as amended by BAPCPA.

The dismissal or conversion of Chapter 7 bankruptcy cases is governed by 11 U.S.C. § 707(b).  The Chapter 7 case of an individual debtor, whose debts are primarily consumer debts, may be dismissed under § 707(b)(1) if a bankruptcy court finds, after notice and hearing, "that the granting of relief would be an abuse of the provisions of" Chapter 7.  The determination as to whether "abuse" exists in a given case is determined by applying the objective test found at § 707(b)(2) and/or the subjective test found at § 707(b)(3).  The objective test of § 707(b)(2) is commonly referred to as the Means Test.  The Means Test of § 707(b)(2) creates a presumption that abuse exists when a debtor's income is greater than the median income for his or her household size in the domiciliary state and his or her income less applicable expenses (as calculated pursuant to uniform standards) is sufficient to pay over a 60 month period at least the

---

[3] Unless otherwise indicated, all Code, chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 subsequent to its amendment by the Bankruptcy Abuse and Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).

6

lessor of (1) the greater of 25% of the debtor's nonpriority unsecured claims or $6,000.00, or (2) $10,000.00. Explained in another way, the Means Test sets forth the congressionally determined calculations of a debtor's income and expenses, which, depending upon the result obtained from completing the calculations, creates a presumption that the bankruptcy filing is an abuse of Chapter 7 or permits the Chapter 7 case to proceed.

In addition to seeking dismissal of this case under § 707(b)(2), the UST also argues that this case should be dismissed under § 707(b)(3), which reads:

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
>
>> (A) whether the debtor filed the petition in bad faith; or
>>
>> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

Unlike the Means Test of § 707(b)(2), § 707(b)(3) prescribes a more subjective test for abuse that is based on the "totality of the circumstances."[4] The Bankruptcy Code, however, does not define the phrase, "totality of the circumstances." Prior to BAPCPA, courts in the Ninth Circuit looked to the "totality of the circumstances" to interpret the term "substantial abuse" in former § 707(b). *Price v. U.S. Trustee (In re Price),* 353 F.3d 1135, 1139-40 (9th Cir. 2004). Because Congress retained the phrase "totality of the circumstances" in BAPCPA, the Court concludes that it may

---

[4] As one court recently explained, the "'means test' of § 707(b)(2) is a strict mechanical test, while § 707(b)(3)'s approach is grounded in equity. *In re Peoples,* 345 B.R. 840, 843 (Bankr.N.D.Ohio 2006); *In re Hartwick,* 352 B.R. 867, 870 (Bankr.D.Minn.2006)." *In re Haar*, 2007 WL 1655498 (Bankr. N.D.Ohio June 4, 2007).

look to pre-BAPCPA case law to construe the meaning of that phrase under § 707(b)(3).

Prior to the enactment of BAPCPA, the history of 11 U.S.C. § 707(b) demonstrated that § 707(b) "was intended as the mechanism by which the court or the United States trustee could address general concerns regarding discharge of consumer debt" by debtors. *United States v. Padilla (In re Padilla)*, 222 F.3d 1184, 1194 (9th Cir. 2000). As noted by the Court in *Price*, "Congress added this section to the Code 'in response to concerns that some debtors who could easily pay their creditors might resort to chapter 7 to avoid their obligations.'" *Price*, 353 F.3d at 1138, *quoting* 6 COLLIER ON BANKRUPTCY ¶ 707.04 at 707-15. Indeed, this Court noted on a prior occasion that 11 U.S.C. § 707(b) was "enacted to impose a restraint on consumer debtors' access to Chapter 7 discharge by interposing bankruptcy courts as gatekeepers who could examine the worthiness of debtor petitions and dismiss those petitions deemed abusive." *In re Stiff*, 17 Mont. B.R. 474, 477 (Bankr. D. Mont. 1999) (quoting *First USA v. Lamanna (In re Lamanna)*, 153 F.3d 1, 3 (1st Cir. 1998)).

In order to prevail under 11 U.S.C. § 707(b), pre-BAPCPA, the UST was required to first show that a debtor's debts were primarily consumer debts, and second, that granting relief under Chapter 7 of the Bankruptcy Code would be a substantial abuse of Chapter 7. 11 U.S.C. § 707(b); *Price,* 353 F.3d at 1138. Because the term "substantial abuse" was not defined in the Bankruptcy Code, the Court in *Price* set forth six nonexclusive criteria for courts to consider when reviewing a case for substantial abuse.[5] *Price,* 353 F.3d at 1139-40. The *Price* Court,

---

[5] Quoting 3 NORTON BANKRUPTCY LAW AND PRACTICE 2d § 67:5, at 67-10, the Court in *Price* set forth the following six criteria:

(1) Whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims;

8

however, went on to explain that:

> [t]he primary factor defining substantial abuse is the debtor's ability to pay his debts as determined by the ability to fund a Chapter 13 plan.  Thus, we have concluded that a "debtor's ability to pay his debts will, standing alone, justify a section 707(b) dismissal."

*Price,* 353 F.3d at 1140, quoting *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 914 (9th Cir. 1988).

Judge Thomas in *Price* further elaborated:

> . . . while "debtor's ability to pay his debts will, standing alone, justify a section 707(b) dismissal," *Kelly,* 841 F.2d at 914, the debtor's ability to pay his or her debts does not *compel* a section 707(b) dismissal of the petition as a matter of law. In addition, as *Kelly* noted, a bankruptcy court could make a finding of substantial abuse under the facts of a particular case even if the debtor did not have the ability to fund a Chapter 13 plan.  *Id.* at 914-15.  Thus, *Kelly* did not establish an absolute, *per se* rule.  Rather, *Kelly* quite appropriately held that ability to fund a Chapter 13 plan is the most important consideration under § 707(b), and that a finding of ability to pay alone is sufficient to sustain a § 707(b) dismissal.

*Price*, 353 F.3d at 1140.  Although the Court concluded that a debtor's ability to fund a plan is the most important consideration under § 707(b), the Court qualified that conclusion by declining to impose a bright line test or *per se* rule that would require the dismissal of a case if the debtor was able to fund a chapter 13 plan, thereby enhancing the application of judicial discretion to determine abuse within the context of § 707(b).  *Id.*

   While this Court and the Ninth Circuit Court of Appeals previously referred to the totality of the circumstances in making a determination of substantial abuse, in a recent post-BAPCPA

---

(2) Whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity;
(3) Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them;
(4) Whether the debtor's proposed family budget is excessive or extravagant;
(5) Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and
(6) Whether the debtor has engaged in eve-of-bankruptcy purchases.

9

decision, one court characterized the Ninth Circuit's holding in *Kelly* as a *per se* rule that was

codified by BAPCPA in § 707(b)(2), "with its presumption of abuse for debtors who have the

ability to pay based on application of the means test formula."  *In re Nockerts*, 357 B.R. 497,

2006 WL 3689465 (Bankr. E.D.Wis. 2006), referencing *In re Ontiveros*, 198 B.R. 284 (C.D.Ill.

1996).  The court in *Nockerts* cautioned that:

> [W]hile ability to pay is a factor in the totality of circumstances test, and may even
> be the primary factor to be considered, if it is the only indicia of abuse, the case
> should not be dismissed under that test. Given the detailed nature of the means
> test in § 707(b)(2), this Court holds that similar to the old totality of the
> circumstances test, more than an ability to pay (as shown on the debtor's Schedule
> I and J) must be shown to demonstrate abuse under § 707(b)(3)(B).

*Id.*  Judge Kelley in *Nockerts* concedes that a debtor's ability to fund a Chapter 13 plan could be

a factor considered by the courts under § 707(b)(3) if the case involved below-median income

debtors or if the debtors had, in some way, manipulated the means test.

This Court appreciates Judge Kelley's cautionary statement in *Nockerts*.  However, a

debtor's ability to pay is still an important factor under § 707(b)(3), notwithstanding the means

test of § 707(b)(2).  *In re Sorrell*, 359 B.R. 167, 2007 WL 211276 (Bankr. D.Ohio 2007) ("the

plain language of § 707(b)(3), read in conjunction with § 707(b)(1) and (2), is clear and compels

a conclusion that a court must consider a debtor's actual debt-paying ability in ruling on a motion

to dismiss based on abuse where the presumption does not arise or is rebutted"), and *In re Pak*,

343 B.R. 239 (Bankr. N.D.Cal. 2006) ("It would be counterintuitive to construe [§ 707(b)(3)'s

use of the phrase 'the totality of the circumstances'], as used in BAPCPA, to exclude a

consideration of the debtor's ability to pay.").  The Court considers the discussion in *Price* to

dispel any belief that a bright line test or a *per se* rule exists in the Ninth Circuit.

10

DISCUSSION

Turning to the case *sub judice*, Debtors concede that their debts are primarily consumer debts.  Thus, under the objective test of § 707(b)(2), the UST must show that Debtors' income is greater than the median income for Debtors' household size in Montana and that Debtors' income less applicable expenses is sufficient to pay over a 60 month period at least the lessor of (1) the greater of 25% of Debtors' nonpriority unsecured claims or $6,000.00, or (2) $10,000.00.  After reviewing the record, the Court finds that Debtors have, over a period of 60 months, the ability to pay the lesser of $6,000.00 of their nonpriority unsecured claims, or $10,000.00.

The UST and Debtors agree that Debtors' annualized current monthly income is above Montana's applicable median and, therefore, Debtors are required to complete the balance of their Form B22.  Given the concession made by Debtors, it would appear at first blush that Debtors' Form B22C filed November 6, 2006, should be amended to comport with the Form B22A prepared by the UST.  However, at the hearing, Mark testified that Debtors' home repairs went by the wayside during a period of time when Diana was unemployed.  In particular, Mark testified that Debtors needed a new furnace at a price of $3,900, that Debtors would like to finish their downstairs bathroom at a price of $700; repair their deck at a price of $1,800 to $3,000; bring their laundry area "up to code" by, among other things, moving their hot water tank, at a price of $3,000; add a wall to their master bedroom at a price of $1,000; repair their fence at a price of $700; and resurface Debtors' driveway at a price of $900.  Mark also testified that Debtors would like to replace broken cabinets in their kitchen and install a larger water reservoir, but Mark did not give an estimated cost of completing the latter two items.  Based upon the foregoing desirous repairs, Debtors claim they are entitled to a $450.00 adjustment for housing

11

and utilities on Form B22.

Prior to commencement of this bankruptcy case, Rezentes estimated that Debtors spent $20.71 per month on home repairs over a 14 month period. Although Debtors did not include any adjustment for home repairs on their Form B22C's filed August 3, 2006, and November 6, 2006, Debtors did include an expense of $450.00 for home maintenance on their Schedule J. The UST's office requested supporting documentation from Debtors for their claimed expense but received nothing from Debtors. In response to the foregoing testimony of Rezentes, Debtors' counsel countered that Schedule J was a forward projection that encompassed years of deferred maintenance.

Considering all the supposedly necessary repairs discussed by Mark, exclusive of the cabinet repair and installation of a water reservoir,[6] the Court calculates that Debtors would only need to spend $200.00 per month over a period of 60 months to complete all the discussed repairs. Thus, it is clearly evident that Debtors have overestimated the adjustment to which they may be entitled on Form B22A.

However, in addition to overestimating the allowed adjustment, the Court agrees with the UST that some of the stated repairs would be nice to do if a person could afford such repairs, but they certainly are not necessary for the maintenance and support of Debtors' household. The Court would agree with Debtors that the replacement of the furnace is a necessary item. Mark previously observed flames shooting out the side of the furnace and had to jury-rig the furnace to

---

[6] Mark did not give an estimate as to what it would cost to replace or repair the kitchen cabinets. Additionally, Mark did not state what it would cost to install a water reservoir. This Court does not have the expertise to even guess what such repairs would cost and, therefore, the Court will not give further consideration to such repairs.

keep it running.  The dilapidated furnace poses an obvious safety threat to Debtors and their children and the Court would grant Debtors a monthly adjustment on Form B22A of $65.00 for such repair.

Mark also testified that the deck is falling off Debtors' home due to excavation work that was previously done under the deck.  A deck that is suffering from severe rot or is falling away from the house is another item that could pose a threat to Debtors and their children.  The Court would thus agree that Debtors should be entitled to an adjustment of $1,800, or $30.00 per month over a period of 60 months, on Form B22A in order to complete such repairs.

Other than replacing the furnace and repairing the deck, the Court finds that the other items discussed by Mark are items that would be nice to do if Debtors could afford such repairs.  However, such repairs should not be completed at the detriment of Debtors' creditors.  Consequently, the Court would allow Debtors an adjustment of $95.00 per month at line 21 of Form B22A.

The other item of contention between the UST and Debtors is Debtors' line item expense of $285.00 for educational expenses.  Line 38 specifically pertains to the expenses "in providing elementary and secondary education" for dependent children under the age of 18.  Mark testified that the expenses asserted by Debtors pertain to daycare, school lunches, school supplies, extra-curricular activities and the such.  The Court agrees with the UST that under 11 U.S.C. § 707(b)(2)(A)(ii)(IV), it is incumbent upon Debtors to show that their claimed expense on line 38 is for the purpose of attending a private or public elementary or secondary school, is reasonably necessary, and is not already accounted for in the National and Local standards or Other

13

Necessary Expenses.[7]  Debtors have failed their burden on this claimed expense, and thus, the expense is disallowed except to the extent of $25.00 to which the UST has not objected.

Allowing Debtors a line item expense of $95.00 on line 21 and reducing the line item expense on line 38 to $25.00, reduces Debtors' allowable expenses to approximately $9,095.88. Subtracting the foregoing amount from Debtors' currently monthly income of $9,502.00, leaves Debtors with roughly $406.12 in monthly disposable income, or $24,367.20 in 60-month disposable income under § 707(b)(2).  The foregoing amount results in a presumption of abuse as determined in Part VI of Form B22A.  Debtors failed to present evidence to rebut the presumption of abuse, and thus, the Court concludes that dismissal under §707(b)(2) is appropriate.

Generally, the Court's analysis would end here.  However, the Court concludes that it would be equally insightful to discuss why dismissal of this case is also warranted under § 707(b)(3).  As discussed above, this Court has already determined that Debtors have the ability to pay a substantial portion of their debts as determined by Debtors' ability to fund a Chapter 13 plan.  However, in addition to being able to repay a substantial portion of their listed unsecured debt, Debtors have made two attempts to discharge in excess of $90,000 of unsecured debt.[8]  At

---

[7]  11 U.S.C. § 707(b)(2)(A)(ii)(IV) reads: "[T]he debtor's monthly expenses may include the actual expenses for each dependent child . . to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses[.]"

[8]  Debtors also listed the same $90,120.36 of unsecured debt in Case No. 06-60154.  The Court uses the term "in excess" because Debtors have not listed amounts owing to 26 unsecured creditors.

the same time, Debtors have made no effort to amend their Schedules to include all the medical

debt that was intentionally omitted from Debtors' Schedule F.  Debtors signed a sworn

declaration on March 27, 2006, stating under penalty of perjury that they had read their schedules

and that such schedules were true and correct to the best of Debtors' knowledge.  Contrary to the

sworn declaration, Mark testified at the hearing held November 7, 2006, that Debtors

intentionally omitted all their medical debt from their schedules.  The original omission of such

medical debts from Debtors' schedules lead to the conversion of this case to Chapter 7.  Debtors'

failure to amend their schedules to include the debt following the November 7, 2006, hearing is

now a factor that weighs heavily against the Debtors at this juncture in this case.

Debtors' ability to repay a portion of their unsecured debt combined with Debtors' failure

to make any attempt to amend their schedules once it came to light that Debtors' schedules were

inaccurate, convinces this Court that dismissal under § 707(b)(3) is appropriate.  Therefore, the

Court will enter a separate order that provides as follows:

IT IS ORDERED that the United States Trustee's Motion to Dismiss filed January 25,

2007, is GRANTED; and this Chapter 7 bankruptcy case is DISMISSED under 11 U.S.C. §§

707(b)(2) and 707(b)(3).

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

15